*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

J JEFFERS & CO LLC, and 228 WEST MICHIGAN AVENUE, LLC

     Plaintiffs-Appellants,

v

CITY OF JACKSON,

     Defendant-Appellee.

and

228 MICHIGAN AVENUE LLC, and COLLIER GIBSON, LLC

     Defendants.

UNPUBLISHED
April 22, 2026
2:15 PM

No. 375230
Jackson Circuit Court
LC No. 25-000473-CH

Before: TREBILCOCK, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

This appeal concerns the trial court's summary dismissal of an action brought by a developer after the City of Jackson concluded the failure to close a real estate transaction by a date certain voided the parties' contract. Here the trial court ruled on the City's motion for summary disposition concerning the developer's originally filed complaint, but plaintiff had filed a substantially different amended complaint after the City's motion as a matter of right under MCR 2.118(A)(1). We vacate the trial court's judgment, and remand for further proceedings.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

Located in downtown Jackson, the one-hundred-year-old Hayes Hotel was both once a vibrant hotel and the headquarters of Consumers Energy. The building has sat vacant since the early 2000s. Efforts to revitalize that property and turn it into a mixed-residential and commercial development led to this litigation.

## A. PERTINENT FACTUAL ALLEGATIONS

We begin with a procedural note to explain our upcoming factual recitation. Plaintiff, J. Jeffers & Co, LLC,[1] commenced this litigation against defendant, City of Jackson, alleging breach of contract and equitable estoppel. Following the trial court's denial of plaintiff's contemporaneously filed motion for a temporary restraining order, the City moved for summary disposition under MCR 2.116(C)(8) and (C)(10). Within fourteen days thereafter, plaintiff filed its First Amended Complaint as it was entitled to do by right under MCR 2.118(A)(1). Under the Court Rules, the First Amended Complaint superseded the original complaint. See *Progress Mich v Attorney General*, 506 Mich 74, 95; 954 NW2d 475 (2020), citing MCR 2.118(A)(4). With this understanding and on review of the trial court's grant of summary disposition under (C)(8), we take as true the well-pleaded factual allegations in plaintiff's First Amended Complaint. *El-Khalil v Oakwood Healthcare, Inc.*, 504 Mich 152, 159-160; 934 NW2d 665 (2019). They are as follows.

On April 11, 2022, the parties entered into a Purchase Agreement, in which the City agreed to sell the hotel to plaintiff for $25,000. We will set forth some of the details of that contract below, but note at the outset that its Section 2 included a "Closing Date" of 30 days after the parties completed a 180-day "Due Diligence Period," during which plaintiff was to complete certain tasks like conducting surveys and environmental site samples, obtaining applicable governmental permits and approvals, and securing title commitments and financing. By addendum, on January 27, 2023, the parties modified that provision to "be on a date and time as is mutually agreeable to the parties . . . ; provided, however, that the closing shall occur not later than December 31, 2023." Then, on April 3, 2024, a second addendum extended the outside Closing Date to December 31, 2024. Both addenda clarified that "all other terms and conditions set forth in the . . . Purchase Agreement . . . remain[ed] in full force and effect."

Plaintiff's multimillion-dollar planned conversion of the hotel ultimately fell through. It contends in this lawsuit that the City dragged its feet in performing under the Purchase Agreement, which led to the parties' two mutual extensions of the Closing Date as set forth above (each of which, we note, occurred *after* the original and modified Closing Dates). For example, plaintiff alleges the City agreed to help secure financing through the State's Revolving Loan Fund but "took no action" to effectuate this. Then the City doubled down, offering for plaintiff to use low-income housing tax credits "to make up the difference in funding due to [the City's] mistake." Yet, the City later balked at doing so. It also contends, for example, that the City failed to provide certain documents required by the title company to close.

Things came to a head on February 25, 2025, when the Jackson City Council added—at the last minute and contrary to what it had told plaintiff a few days earlier—the Hayes Hotel project to its regularly scheduled City Council meeting on that date. Then, at the meeting, the City entered into a similar purchase agreement with another developer, defendant Collier Gibson. This move allegedly blindsided plaintiff, for even though it was working diligently towards closing, the City

---

[1] There are two plaintiffs in this matter, J. Jeffers & Co, LLC and its subsidiary, 228 West Michigan Avenue, LLC. For ease, we refer to them in the singular.

did not provide plaintiff with notice of default for failing to close—which would trigger a 10-day opportunity to cure—as required by Section 18.1.

## B. PROCEDURAL HISTORY

As mentioned at the outset, plaintiff's original complaint contained two causes of action—breach of contract and equitable estoppel. The primary claim, breach of contract, alleged that the Purchase Agreement was still in force when the City agreed to sell the hotel to Collier Gibson, and that the City breached its contract with plaintiff by doing so by not giving notice and an opportunity to cure under Section 18.1. The City moved for summary disposition under MCR 2.116(C)(8) and (C)(10), and plaintiff responded by filing, as of matter of right under MCR 2.118(A)(1), its five-count First Amended Complaint.

That operative complaint (i.e., plaintiff's First Amended Complaint) states three separate breach-of-contract claims against the City. Count One alleges a breach of Section 9, the "Conditions Precedent to Purchaser's Obligations." Under that provision, the City "acknowledged that [plaintiff]'s obligation to complete the Closing . . . is expressly contingent upon satisfaction" of five "necessary prerequisites" that were "included in th[e] Agreement solely for [plaintiff]'s benefit." We focus on two of the prerequisites: 9.1 ("Seller's compliance with the terms of this Agreement") and 9.4 ("The issuance to Purchaser of the extended ALTA owner's policy of title insurance in the amount of the Purchaser Price pursuant to the Title Commitment, subject only to the Permitted Exceptions, upon payment of the premium therefore (the 'Title Policy')"). Plaintiff alleges in Count One that the City breached these provisions by disregarding requests for information made by the title company and by failing to adequately ensure issuance of a title policy prior to the Closing Date. And because the City did so, plaintiff alleges that it is entitled to enforce Section 18.2's specific-performance provision.

Plaintiff's Count Two focuses on Section 7 of the Purchase Agreement, titled "Access and Inspections; Cooperation." Under 7.1, the City agreed that plaintiff would "have the right to . . . obtain . . . (vi) all other government approvals for Purchaser's anticipated development of the Property as a mixed use redevelopment consisting of approximately 91 apartment units and 8,000 square feet of commercial/retail space (the 'Project'), including, without limitation, approvals of development incentives, in such form and amounts deemed necessary by Purchaser in its sole discretion (collectively, the 'Permits and Approvals') . . . ." Section 7.2 then provided that the City would "fully cooperate with Purchaser in obtaining the necessary Permits and Approvals from those governmental agencies other than Seller and any other reasonable request by Purchaser. Seller shall join in any zoning, land use or incentive application requested by Purchaser, other than such zoning, land use or incentive application solely within the Seller's administrative or legislative authority, all at no cost or expense to Seller. Seller and Purchaser shall otherwise agree to work together in good faith to effectuate the provisions of this Agreement." Count Two alleges the City's failure to facilitate financing through the State's Revolving Loan Fund and the low-income housing tax credits breached Sections 7.1 and 7.2.

We note Counts Three and Four appear to largely replicate plaintiff's original counts one (breach of contract for agreeing to sell the hotel to Collier Gibson) and two (equitable estoppel). Count Five, however, is completely new. It alleges a claim of unjust enrichment against Collier Gibson and its affiliated entity, defendant 228 Michigan Ave, LLC. In short, plaintiff claims it

performed significant work on the hotel project for the better part of three years, increasing its value, and that Collier Gibson unjustly reaped the reward.

On the City's motion to dismiss the original complaint, the trial court granted summary disposition under (C)(8). The parties discussed plaintiff having amended its complaint (and the City's futility response) at the hearing, but the trial court's reasoning on the record for why it granted summary disposition in the City's favor did not. Nor did it reference futility as a reason for discarding the First Amended Complaint. When granting summary disposition, the trial court focused exclusively on the effect of the Closing Date's passing:

> The expressed language of this purchase agreement says that the closing must occur no later than December 31 of 2024. The only way the plaintiff could avoid a failure to close by that date would be to tender full performance prior to that. That has not been alleged and I'm sure it's been alleged because it never happened. There was no tender or full performance on or before the closing date. As a result, this agreement expired by its own terms.

In short, reasoned the trial court, "[o]nce the agreement expired, the City was under no obligation to do anything whatsoever with respect to this agreement." So it granted summary disposition in the City's favor and awarded attorney fees under the terms of the agreement. An order adopting the trial court's decision for the "reasons set forth on the record" was subsequently entered, including a reference to plaintiff's First Amended Complaint being "stricken" as futile. Plaintiff appeals by right.

## II. ANALYSIS

Pursuant to MCR 2.118(A)(1), "[a] party may amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party." An amended complaint, unless it otherwise so indicates, "supersedes the former pleading." *Progress Mich*, 506 Mich at 95, quoting MCR 2.118(A)(4) (quotation marks omitted). Put differently, "the prior pleading is considered abandoned and withdrawn," and its parts are "no longer part of the pleader's averments," which "ensure[s] that the court and the opposing parties will be aware of the points at issue." *Grzesick v Cepela*, 237 Mich App 554, 562; 603 NW2d 809 (1999) (citation omitted).

This Court reviews de novo a trial court's grant of summary disposition. *Khalil*, 504 Mich at 159. And after thorough examination of the record, it is apparent to us that the trial court erroneously granted summary disposition in the City's favor by treating the originally filed complaint as the operative one, considering the City's motion for summary disposition targeted at the original complaint, finding the original complaint failed to state a claim on which relief can be granted under (C)(8), and not evaluating whether the First Amended Complaint was futile. For example, it found that the Purchase Agreement expired when the parties did not close by December 31, 2024, and thus plaintiff's claims were without merit. But the First Amended Complaint painted broader swaths, with at least two claims—Counts One and Two—depending not on if the Purchase Agreement expired after that date, but rather on conduct that occurred prior to it. And as for the other claims, the First Amended Complaint added additional supporting facts that the trial court apparently did not consider. The trial court's grant of summary disposition was, therefore, erroneous.

Given the trial court's procedural error, we do not address any other issues raised by the parties. This includes plaintiff's argument that the trial court's contractual interpretation concerning the Purchase Agreement's termination date was erroneous, and that the trial court wrongly found its alternative equitable estoppel claim without merit, as well as the City's contention that the First Amended Complaint is futile,[2] and that the Statute of Frauds and the Purchase Agreement's incorporation clause bar plaintiff's claims. Having reset this matter to when plaintiff filed its First Amended Complaint, the parties are free to raise these arguments anew below. And if they do, the trial court must consider them again in the context of the First Amended Complaint.

## III. CONCLUSION

For these reasons, we vacate the trial court's judgment, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. Having prevailed on appeal, plaintiff may tax costs under MCR 7.219.

/s/ Christopher M. Trebilcock
/s/ Mark T. Boonstra
/s/ Anica Letica

---

[2] We acknowledge the order granting summary disposition references a futility finding and that "a court speaks through its orders." *Luscombe v Shedd's Food Products Corp*, 212 Mich App 537, 540; 539 NW2d 210 (1995). But that order makes clear it incorporated the trial court's "reasons set forth on the record" that, as already discussed, contains no reasoning or an ultimate decision on futility.